UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MAGDALENA GOMEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:18-cv-30167-KAR |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM AND ORDER REGARDING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT
(Dkt. No. 36)

ROBERTSON, U.S.M.J.

I.      INTRODUCTION

Plaintiff Magdalena Gomez ("Plaintiff") alleges that she was injured after she entered the United States Post Office's Forest Park Station in Springfield, Massachusetts on a rainy day and slipped and fell on the tile floor. She brings a negligence action against the United States ("Defendant" or "government") under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.* The government has moved for summary judgment (Dkt. No. 36). The parties have consented to this court's jurisdiction (Dkt. No. 15). *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. For the reasons that follow, the government's motion is DENIED.

II.     BACKGROUND[1]

---

[1] Unless another source is cited, the facts are drawn from Defendants' Statement of Material Facts Under Local Rule 56.1 (Dkt. No. 38); Plaintiff's Responses to Defendant's Statement of Material Facts Under Local Rule 56.1 and Statement of Disputed Facts (Dkt. No. 42); and Defendant's Combined Statement of Material Facts and Plaintiff's Responses and Defendant's Response to Plaintiff's Statement of Disputed Facts (Dkt. No. 44). In accordance with the summary judgment standard, the evidence is viewed in the light most favorable to Plaintiff, the nonmoving party. *See Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 820 (1st Cir. 1991).

On December 22, 2015, Plaintiff resided at 43 Kenwood Park in Springfield (Dkt. No. 44 at 1 ¶ 1). She had a personal post office box and a separate business post office box at the Forest Park Station that was located at 393 Belmont Avenue in Springfield (Dkt. No. 44 at 1 ¶¶ 2-4). Plaintiff tried to go to the post office to check her boxes every day (Dkt. No. 44 at 1 ¶ 5). Because she was a regular visitor, she was familiar with the post office employees' names (Dkt. No. 44 at 2 ¶ 6).

Precipitation records for December 22, 2015 indicated periods of either rain or light drizzle from 7:40 A.M. to 10:45 A.M., from 11:42 A.M. to 12:55 P.M., and from 2:42 P.M. through 3:20 P.M. (Dkt. No. 42 at 3 ¶ 2; Dkt. No. 42-5 at 2-3; Dkt. No. 44 at 8 ¶ 2). Pamela Dame and Robert Cramer, the supervisors on duty at the Forest Park Station on that date, spread salt outside the building "all morning" (Dkt. No. 44 at 6 ¶ 25, at 8 ¶¶ 3, 5).

Plaintiff left the school where she worked between 2:30 and 3:00 P.M. on December 22, 2015 and drove ten or fifteen minutes to the Forest Park Station to retrieve her mail (Dkt. No. 44 at 8 ¶ 1). It was raining when she arrived at the post office and entered the building (Dkt. No. 44 at 3 ¶ 10).

The Forest Park Station's two glass doors that faced Belmont Avenue were separated by a glass panel (Dkt. No. 44 at 3 ¶ 12). The entrance door on the right side swung inward and the left-hand exit door swung out (Dkt. No. 44 at 9 ¶ 7). The doors opened into the lobby and the post office box section of the station (Dkt. No. 44 at 3 ¶ 13). The customer service area was to the left and was separated from the lobby and post office box section by a set of doors (Dkt. No. 44 at 9 ¶ 7).

Plaintiff entered the lobby through the door on the right and noticed a "line of people" that extended from the customer service area on her left (Dkt. No. 44 at 9 ¶ 9). She took a few

steps, slipped on the bare tile floor, lost her footing, and fell (Dkt. No. 44 at 4 ¶ 18, at 9-10 ¶¶ 8, 10, at 12 ¶ 16). Her head and the left side of her body hit the floor (Dkt. No. 44 at 4 ¶ 18).

Although there may have been mats immediately inside the entrance doors and in the back of the lobby near the post office boxes, there was a bare expanse of tile floor between those mats (Dkt. No. 42-6 at 2; Dkt. No. 44 at 12 ¶ 16, at 13-14 ¶ 20). There were no mats on the floor where Plaintiff slipped and fell (Dkt. No. 44 at 4 ¶ 16, at 5 ¶ 19, at 9 ¶ 8).

When Diane Barroso, a postal clerk in the customer service area, heard a noise in the lobby, she called to her supervisors, Ms. Dame and Mr. Cramer, who proceeded to the lobby (Dkt. No. 44 at 5-6 ¶¶ 22, 23). Mr. Cramer noted that Plaintiff's clothes appeared to be dry (Dkt. No. 44 at 7 ¶ 30). He did not observe any water or wet footprints on the floor (Dkt. No. 44 at 7 ¶ 30).

Plaintiff was taken to an area in the back of the post office building where she sat in a chair and awaited the arrival of the ambulance (Dkt. No. 44 at 7 ¶ 32, at 14 ¶ 23). Ms. Dame photographed Plaintiff and the soles of her shoes (Dkt. No. 44 at 14 ¶ 23). No black grease was visible in the photos of the soles of Plaintiff's shoes (Dkt. No. 42-10 at 2-3; Dkt. No. 44 at 15 ¶ 25).

While Plaintiff was seated, she wrote and signed a statement, which said, "Walked into post office slid on wet floor hit my head left side of body hit hip, ankle, head really hard. Feel nauseous, a little disoriented. Can't write anymore –" (Dkt. No. 42-8 at 2; Dkt. No. 44 at 14-15 ¶¶ 23, 24). She added, "No yellow wet floor warning stand" (Dkt. No. 42-8 at 2; Dkt. No. 44 at 14-15 ¶ 24).

Ms. Dame stated that, after Plaintiff fell, she saw wet footprints on the mats in front of the entrance doors, but did not see wet footprints or wetness on the bare portions of the lobby

floor (Dkt. No. 44 at 7 ¶ 31, at 9 ¶ 6).  Ms. Dame and Mr. Cramer put an extra mat behind the front door in "between the two mats coming out of the box section" because "a little bit of tile" was not covered (Dkt. No. 42-2 at 13; Dkt. No. 44 at 12-13 ¶¶ 18-19).  They also placed a yellow warning sign, which they kept in the lobby, on the right side near the corner of the post office box section "[s]o that everybody knows that if they come in that it was wet from coming in from outside" (Dkt. No. 44 at 12-13 ¶¶ 18, 19).  The sign was not displayed in the lobby when Plaintiff fell (Dkt. No. 44 at 14 ¶ 21).

Ms. Dame stated that the lobby floor was not wet on the morning of the day Plaintiff fell (Dkt. No. 44 at 6 ¶ 26).  Although Mr. Cramer generally checked the lobby every two to three hours, he had no specific memory of having gone into the post office box area on December 22, 2015 before Plaintiff fell in the mid-afternoon (Dkt. No. 38-4 at 14; Dkt. No. 44 at 14 ¶ 22).  The "Accident Conditions" in the report that the government produced indicated "rain" for the weather and "wet" for the surface/road conditions (Dkt. No. 42-9 at 2; Dkt. No. 44 at 8 ¶ 4).

Mr. Cramer described the protocol that they followed when it rained:  "We put the mats down.  There's a carpet right at the entrance, that way you could walk in and it will absorb some of the water as soon as you get in. . . . [W]e do – we keep a wet floor sign out in the lobby to the side of one of our writing tables just in case there's ever a situation.  They just put it right out" (Dkt. No. 42-3 at 8; Dkt. No. 44 at 12 ¶ 17).

    III.    STANDARD OF REVIEW

The purpose of summary judgment is "'to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990) (citation omitted).  "Summary judgment is appropriate when, based on the pleadings, discovery, and disclosure materials in the record, 'there is no genuine dispute as to any

material fact and the moving party is entitled to judgment as a matter of law.'" *Ruggiero v. Am. United Life Ins. Co.*, 137 F. Supp. 3d 104, 111 (D. Mass. 2015) (quoting Fed. R. Civ. P. 56(a), (c)). "A 'genuine' dispute is one that, based on the supporting evidence, 'a reasonable [fact finder] could resolve . . . in favor of the nonmoving party,' and a 'material' fact is one that has 'the potential to affect the outcome of the suit under the applicable law.'" *Id.* at 111-12 (quoting *Sanchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir. 1996) (citations and quotation marks omitted)).

When reviewing a motion for summary judgment, the court views the facts "in the light most favorable to the non-moving party." *Zambrana–Marrero v. Suarez–Cruz*, 172 F.3d 122, 125 (1st Cir. 1999). "If the moving party satisfies the burden of showing, based on evidentiary material, that there is no genuine issue of material fact, the burden shifts to the nonmoving party to demonstrate by reference to specific provable facts 'that a reasonable jury could return a verdict for the nonmoving party.'" *Ruggiero,* 137 F. Supp. 3d at 112 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "[C]onclusory allegations, improbable inferences, and unsupported speculations" are insufficient to establish a genuine dispute of material fact. *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

IV.    ANALYSIS

A.    <u>Premises Liability for Negligence</u>

Under the Federal Tort Claims Act, the federal government is liable in tort "in the same manner and to the same extent as a private individual under like circumstances . . . ." 28 U.S.C. § 2674. "In deciding the 'manner' and 'extent' to which a private individual would be liable, the law of the place where the act or omission occurred must be applied." *Goldman v. United States,*

790 F.2d 181, 183 (1st Cir. 1986) (quoting 28 U.S.C. § 1346(b)). Inasmuch as Plaintiff's accident happened in Massachusetts, the law of the Commonwealth applies.

Plaintiff contends that Defendant, as the entity in control of Forest Park Station, is liable for its negligence in "failing to maintain the [post office] floor in a reasonably safe condition" and in failing to warn of the "slippery and dangerous conditions" (Dkt. No. 1 ¶¶ 6, 9). "'Negligence is the failure to exercise that degree of care which a reasonable person would exercise in the circumstances.'" *Guzman v. Pring-Wilson,* 963 N.E.2d 1196, 1198 (Mass. App. Ct. 2012) (quoting *Morgan v. Lalumiere,* 493 N.E.2d 206, 210 (Mass. App. Ct. 1986)). "To prevail on a negligence claim [in Massachusetts], a plaintiff must prove [1] that the defendant owed the plaintiff a duty of reasonable care, [2] that the defendant breached this duty, [3] that damage resulted, and [4] that there was a causal relation between the breach of the duty and the damage." *Jupin v. Kask*, 849 N.E.2d 829, 834-35 (Mass. 2006). "Notwithstanding the fact that the elements are 'conjunctive, meaning that a defendant must demonstrate only that no genuine dispute exists as to the facts material to any one element to prevail on summary judgment,' *Hartford Fire Ins. Co. v. Labchem, Inc.*, CIVIL ACTION NO. 13-13217-RWZ, 2015 WL 12684463, at *2 (D. Mass. Oct. 27, 2015) (citing *Lopez v. Equity Office Mgmt., LLC*, 597 F. Supp. 2d 189, 192 (D. Mass. 2009)), 'whether a defendant exercised reasonable care, the extent of the damage caused, and whether the defendant's breach and the damage were causally related [are generally] the special province of the jury.'" *Kurtz v. Kripalu Ctr. for Yoga & Health, Inc.*, Case No. 3:17-cv-30109-KAR, 2019 WL 454594, at *4 (D. Mass. Feb. 5, 2019) (quoting *Jupin*, 849 N.E.2d at 835). Consequently, "'summary judgment is seldom sought or granted in negligence actions.'" *Manning v. Nobile,* 582 N.E.2d 942, 946 (Mass. 1991) (citations omitted). *See also Koski v. Dollar Tree Stores, Inc.,* 454 F. Supp. 3d 118, 120 (D. Mass. 2020).

6

A business owes invitees a common law duty to use reasonable care to prevent injuries that are caused by the actions of third parties. *See Bowers v. P. Wile's, Inc.,* 54 N.E.3d 1089, 1093 (Mass. 2016); *Dubuque v. Cumberland Farms, Inc.,* 101 N.E.3d 317, 332 (Mass. App. Ct. 2018). "This duty includes an obligation . . . to maintain 'the property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk'; and an obligation . . . 'to warn visitors of any unreasonable dangers of which the landowner is aware or reasonably should be aware.'" *Potvin v. Speedway LLC*, 264 F. Supp. 3d 337, 343 (D. Mass. 2017), *aff'd,* 891 F.3d 410 (1st Cir. 2018) (quoting *Dos Santos v. Coleta,* 987 N.E.2d 1187, 1192 (Mass. 2013)). *See Papadopoulos v. Target Corp.,* 930 N.E.2d 142, 146 (Mass. 2010). A business is liable for injuries caused by a dangerous condition on its property only if the plaintiff proves that the business "(1) knew of, or, by exercise of reasonable care would have discovered, the dangerous condition; (2) the condition created an unreasonable risk of harm; (3) the [business] could not have expected the plaintiff to discover or protect herself against the potential harm; and (4) the [business] failed to exercise reasonable care to protect the plaintiff." *Bowers*, 54 N.E.3d at 1093.

There is no dispute that the government owed Plaintiff, who was a lawful invitee at the post office, a duty of reasonable care to prevent injury to her by conditions caused by the acts of third parties. The government argues that it is entitled to summary judgment because Plaintiff has not shown that a dangerous condition existed when she fell and, even if there was evidence of water on the floor, it did not have actual or constructive notice of the unsafe condition of the floor as is required for premises liability. The government also contends that the transitory water rule, as stated in *Wexler v. Stanetsky Mem'l Chapel, Inc.,* 321 N.E.2d 686, 687 (Mass. App. Ct. 1975), bars Plaintiff's recovery.

B.     The record evidence establishes a genuine question of fact as to whether the post office floor was wet when Plaintiff fell.

The government contends that it is not liable for Plaintiff's injury because there is insufficient evidence that a dangerous condition caused Plaintiff's fall. More specifically, the government maintains that Plaintiff cannot present sufficient proof that the floor was wet. Viewing the facts in the light most favorable to Plaintiff, the government's position is not persuasive.

"'[A] plaintiff seeking to recover against a [business] for a fall on the premises must prove that a dangerous condition existed . . . .'" *Fogarty v. Whole Foods Mkt. Grp., Inc.,* Civil Action No. 18-cv-11090, 2020 WL 1446728, at *6 (D. Mass. Mar. 25, 2020) (quoting *Gomez v. Stop & Shop Supermkt. Co.,* 670 F.3d 395, 397 (1st Cir. 2012)). "Any foreign substance [including water], if unexpectedly encountered by a customer or other invitee on a floor, step, or walkway, can constitute a risk for purposes of imposing liability [for negligence]." *Thurlow v. Shaw's Supermkts., Inc.,* 727 N.E.2d 532, 534 (Mass. App. Ct. 2000). "The plaintiff must identify the hazardous condition that caused [her] to slip, [and] prove that it was present prior to [her] injury . . . ." *Thorell v. ADAP, Inc.*, 789 N.E.2d 1086, 1089 (Mass. App. Ct. 2003).

Notwithstanding the government's contention that Plaintiff relies solely on a generalized description of a wet and slippery floor as proof of the presence of the hazardous condition (Dkt. No. 43 at 3), she has produced sufficient evidence that there was water on the floor of the Forest Park Station's lobby when she slipped and fell shortly before 3:00 P.M. on December 22, 2015. It had rained off and on all day and was raining when Plaintiff opened the door and entered the post office lobby (Dkt. No. 44 at 3 ¶10, at 8 ¶ 2. She noted a "line of people" in the customer service area (Dkt. No. 44 at 9 ¶ 9). Post office employees had put mats on the tile floor immediately in front of the entrance doors, but beyond the mats, the floor was bare (Dkt. No. 42-

5 at 5; Dkt. No. 42-6 at 2; Dkt. No. 44 at 12 ¶ 16, at 13-14 ¶ 20).  Plaintiff took a few steps before she slipped on the bare tile floor and fell (Dkt. No. 44 at 4 ¶ 18, at 9 ¶ 8, at 9 ¶ 10, at 12 ¶ 16).  Shortly after Plaintiff fell, Ms. Dame observed wet footprints on the mats in front of the entrance doors (Dkt. No. 44 at 7 ¶ 31, at 9 ¶ 6).  It is reasonable to infer from this evidence that there was customer traffic just prior to Plaintiff's entry, that the customers tracked water into the building, that the bare tile floor beyond the entry mats was wet from foot traffic when Plaintiff stepped onto it, and that Plaintiff slipped on the water and fell.  *See Rochester Ford Sales, Inc. v. Ford Motor Co.,* 287 F.3d 32, 38 (1st Cir. 2002) (on summary judgment, the court examines the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in her favor).  The cases on which the government relies do not compel a different result.  *Compare Gomez,* 670 F.3d at 398 (there was no evidence of the strange substance that the plaintiff alleged caused his foot to stick to the floor and caused his fall in an aisle of a supermarket); *Fogarty,* 2020 WL 1446728, at *6 (the undisputed record showed that no defect on the staircase was observed on or around the day of the incident); *Stewart v. Five Bridge Inn, LLC,* No. 14-P-1878, 2015 WL 8519517, at *1-2 (Mass. App. Ct. Dec. 10, 2015) (unpublished) (summary judgement was affirmed where there was no evidence beyond the plaintiff's speculation that a rock in a gravel parking lot caused her fall).

      The government maintains that it is entitled to summary judgment because Plaintiff's claim that the wet floor caused her to slip and fall was based on "unsubstantiated conjecture" (Dkt. No. 37 at 6-9).  In support of its argument, the government points to Plaintiff's January 2020 deposition testimony when she was unable to state "with certainty" that there was water on the floor or describe its appearance.  Four years passed between the incident and Plaintiff's deposition.  She explained that, after she fell, she suffered memory deficits, particularly when

she was under the stress of re-living the fall and giving deposition testimony (Dkt. No. 44 at 10-11 ¶¶ 11, 12, 13).  During her deposition, Plaintiff was asked whether she looked at the floor to see why she fell (Dkt. No. 44 at 11 ¶ 14).  Plaintiff responded, "I'm seeing a puddle of water but I don't see how I saw it" (Dkt. No. 44 at 11 ¶ 14).  She also indicated that she saw "a black slick line like grease" in the area where she fell (Dkt. No. 44 at 11 ¶ 14).  Plaintiff said that she knew she fell in water because she "felt" it when she slipped and, as she fell, she understood that water caused her fall (Dkt. No. 44 at 11 ¶ 15).  On the date of the incident in December 2015, Plaintiff wrote that she slid on the "wet" floor and, in response to an interrogatory in September 2019, she stated that she "took a step or two when my feet went out from under me due to water on the surface of the floor" (Dkt. No. 42-7 at 4; Dkt. No. 42-8 at 2; Dkt. No. 44 at 14 ¶ 24).  At most, there are inconsistencies between Plaintiff's deposition testimony four years after the incident and her contemporaneous written statement and her interrogatory answer.  Such discrepancies are fodder for cross-examination but they do not present a basis for granting summary judgment.  *See NGM Ins. Co. v. Santos*, Civ. Act. No. 18-11001-TSH, 2020 WL 5217144, at *1 n.2 (D. Mass. Sept. 1, 2020) ("'Impeachment serves to challenge a witness' credibility, and we are not to make credibility determinations in deciding motions for summary judgment.'") (quoting *Sarrazine v. L. Karp & Sons*, No. 94 C 3351, 1996 WL 355362, at *16 (N.D. Ill. June 21, 1996)).

  The government fares no better when it adds Ms. Dame's and Mr. Cramer's testimony that the floor was dry to Plaintiff's somewhat ambivalent deposition testimony (Dkt. No. 37 at 7; Dkt. No. 43 at 1-2).  First, there is no evidence that either supervisor observed the condition of the floor before Plaintiff fell.  Second, any conflict between their testimony and Plaintiff's various statements present a classic dispute of fact.  "It is inappropriate for a court to determine issues of credibility, since a court may not resolve any credibility assessment in favor of the

party seeking summary judgment." *Cullen v. E.H. Friedrich Co.*, 910 F. Supp. 815, 819 (D. Mass. 1995).

Whether Plaintiff slipped on a wet floor is a genuine question of fact and does not provide a basis for granting summary judgment.

C. <u>There are genuine issues of material fact as to whether the government had notice of a wet lobby floor and whether it failed to take reasonable care to prevent Plaintiff's injury</u>.

Under the traditional approach governing premises liability, in addition to proving that there was a hazardous substance on the floor, a plaintiff was required to prove that the business had "actual or constructive notice of the existence of the dangerous condition, sufficient to allow time for the owner to remedy the condition." *Sheehan v. Roche Bros. Supermkts*, *Inc.,* 863 N.E.2d 1276, 1281 (Mass. 2007) (citing *Gallagher v. Stop & Shop, Inc.,* 126 N.E.2d 190, 192 (Mass. 1955)). The government contends that, even if the floor was wet, there is insufficient evidence that it knew or had reason to know about the condition, and, therefore, it did not breach its duty to Plaintiff (Dkt. No. 37 at 15-16). Plaintiff counters that the traditional approach to proving notice of a hazardous condition does not apply here. Rather, the notice requirement is satisfied under the mode of operation approach to premises liability because there is sufficient evidence that the government's chosen mode of operation made it reasonably foreseeable that an unsafe condition – a wet and slippery floor – would happen regularly (Dkt. No. 41 at 6-11). *See Sheehan,* 863 N.E.2d at 1286. Plaintiff's position has support in the facts and law.

"The mode of operation approach recognizes that a proprietor's manner of operation can create foreseeable hazards that might arise through the actions of third parties, thus obligating the proprietor to take all reasonable precautions necessary to protect against those foreseeable hazards." *Bowers,* 54 N.E.3d at 1094 (citing *Sheehan,* 863 N.E.2d at 1283). The approach

11

"removes the burden on the victim of a slip and fall to prove that the owner or the owner's employees had actual or constructive notice of the dangerous condition or to prove the exact failure that caused the accident." *Sheehan,* 863 N.E.2d at 1285.  Instead, a "'plaintiff satisfies the notice requirement if [s]he establishes that an injury was attributable to a reasonably foreseeable condition on the owner's premises that is related to the owner's . . . mode of operation.'" *Bowers,* 54 N.E.3d at 1094 (quoting *Sheehan,* 863 N.E.2d at 1283).  *See Sarkisian v. Concept Rests., Inc.,* 32 N.E.3d 854, 858 (Mass. 2015).

> The approach developed as a means of addressing cases in which an entity's manner of operating its business makes the regular occurrence of dangerous conditions caused by customer action reasonably foreseeable, but where an injured customer often would be unable to obtain relief for an injury stemming from such foreseeable conditions under traditional premises liability, which requires notice of the specific dangerous condition itself and not . . . general notice of conditions producing the dangerous condition.

*Bowers,* 54 N.E.3d at 1095 (citation omitted).

 If a plaintiff proves that the business's particular mode of operation created a reasonably foreseeable risk of an unsafe condition, in order to recover for negligence, she must also establish that "the business did not take all 'adequate steps' reasonably necessary under the circumstances to protect patrons against that risk" and that she slipped and was injured as a result of the unsafe condition.  *Id.* at 1095 (quoting *Sheehan,* 863 N.E.2d at 1286).  In other words, in addition to proving notice, the plaintiff must also prove that the defendant acted unreasonably under the circumstances and that she was injured as a result.  *Id*.

In support of her argument that the government had notice of a wet and slippery floor, Plaintiff contends that her injury was attributable to the government's "'particular'" mode of operation – leaving an expanse of tile floor uncovered in the public area of the post office on a rainy day – that produced a reasonably foreseeable and regularly occurring dangerous condition

when customers entered with wet feet (Dkt. No. 41 at 6-11). *See Bowers,* 54 N.E.3d at 1095-96 (citing *Sarkisian,* 32 N.E.3d at 858, 861). "Whether an entity's mode of operation makes a dangerous condition reasonably foreseeable ordinarily is a question for the finder of fact." *Id.* at 1094. The photographs of the lobby taken when Plaintiff fell showed bare tile floor between the mats immediately in front of the entrance doors and the mat that was in the post office box area in the back of the lobby (Dkt. No. 42-5 at 5; Dkt. No. 42-6 at 2). Mr. Cramer had a regular practice of checking the lobby's conditions every two or three hours and the post office employees put down extra mats to absorb tracked-in water and put out a warning sign to alert customers to a wet floor on a rainy day. A factfinder could conclude, based on this evidence, that a wet and slippery bare tile floor was a regularly occurring, and therefore reasonably foreseeable, hazardous condition in the post office lobby (Dkt. No. 44 at 12 ¶ 17, at 13 ¶ 19, at 14 ¶ 22). *See Bowers,* 54 N.E.3d at 1096-97 (there was a factual question as to whether the gravel in a store's self-service area was a particular mode of operation that made the recurring risk of stones migrating onto the walkway reasonably foreseeable in view of the store's "informal policy" of having employees check the walkway for dislodged stones "every fifteen minutes"). *Compare Wakim v. Ambius, Inc.,* No. 15-P-1695, 2017 WL 371396 at *2 (Mass. App. Ct. Jan. 26, 2017) (unpublished) (rejecting the mode of operation approach because "there was no evidence that [defendant's] watering of the plants resulted in water regularly being on the mall floor."). Here, a factfinder could conclude that the government's failure to cover the tile floor on a rainy day was a particular mode of operation that resulted in the recurring and reasonably foreseeable hazard of a bare, wet, slippery tile floor.

If the factfinder concludes that the unsafe condition of the floor was a reasonably foreseeable result of the government's mode of operation, then there is a genuine issue of

13

material fact as to whether the government's failure to take additional steps to protect customers, such as covering the bare floor with mats and placing the warning sign in the lobby, was unreasonable in the circumstances and whether Plaintiff slipped and fell as a result of the unsafe conditions. *See Bowers,* 54 N.E.3d at 1097. *See also Fogarty,* 2020 WL 1446728, at *6 ("In assessing the notice requirement, the Supreme Judicial Court ["SJC"] has adopted the 'mode of operation approach' whereby 'it is necessary in determining whether the evidence was sufficient to warrant an inference that the defendant violated its duty of care to consider "whether the jury reasonably could have concluded that, in view of all the circumstances, an ordinarily prudent person in the defendant's position would have taken steps, not taken by the defendant, to prevent the accident that occurred."'") (quoting *Sheehan*, 863 N.E.2d at 1286).

The facts of this case are similar to those of *Stapleton v. Target Corp.,* Civil Action No. 11-CV-10378, 2011 WL 8198179 (D. Mass. July 11, 2011), a case in which the district court relied on the mode of operation doctrine and denied summary judgment. *See id.* at *2-3. As in the instant case, the *Stapleton* plaintiff alleged that she was injured after she entered Target while it was raining, crossed a carpet at the entrance, took approximately five steps on the tile floor, then slipped and fell. *See id.* at *1-2. During his deposition, the store manager testified that "it was his duty to see that a fan was placed in the entry of the store on days when it rain[ed] or snow[ed] to keep the floor dry." *Id.* at *2 n.1. In denying summary judgment, the court found that

> [w]hether the storeowner . . . could have reasonably foreseen the accumulation of a dangerous puddle of rainwater at the entrance to its . . . store, and whether it can be shown to have acted unreasonably in failing to prevent or correct the condition are issues of fact that on this record only a jury can resolve.

*Id.* at *2.

*Stapleton* is not binding on this court but the case is not, as the government contends, unpersuasive (Dkt. No. 43 at 11-12). The government's quarrel with *Stapleton's* statement that "[i]n slip and fall cases, Massachusetts has abandoned the traditional approach to premises liability," *Stapleton,* 2011 WL 8198179, at *2, ignores that the SJC discussed and adopted the mode of operation approach in *Sheehan* and *Bowers* as an alternative to the traditional notice requirement in slip and fall cases. *See Sheehan,* 863 N.E.2d at 1285-86; *Bowers,* 54 N.E.3d at 1094-95. The government is correct that the *Stapleton* case did not address the question of whether the wet floor on which the plaintiff slipped was a recurring condition but the store's notice of the hazardous condition was established by the manager's acknowledgement that he customarily used a fan to dry the floor on rainy and snowy days. This evidence is analogous to the evidence in *Bowers* that employees had an "informal policy" of checking for stones on the walkway like the one on which the plaintiff tripped, *Bowers,* 54 N.E.3d at 1096-97, and to the evidence in this case that post office employees had a practice of setting out extra mats and a warning sign in wet weather.[2]

D.   The holding in *Wexler* does not bar Plaintiff's claim.

Finally, the government argues that the Massachusetts Appeals Court's holding in *Wexler*, which established the so-called "transitory water rule," bars Plaintiff's claim (Dkt. No. 37 at 9-15). The court disagrees.

---

[2] The court is not persuaded by the government's contention that the mode of operation doctrine should not be applied because it "would obliterate the traditional premises liability standard in Massachusetts for all businesses such that the 'mode of operation' approach would apply simply because an individual entered a store" (Dkt. No. 43 at 10). This contention has been rejected by the SJC. *See Bowers,* 54 N.E.3d at 1095-96 (the mode of operation doctrine does not make a business an insurer against all accidents because a plaintiff must still prove that the defendant failed to take measures commensurate with the risk and that the defendant acted unreasonably in the circumstances).

The plaintiff in *Wexler* entered a funeral home lobby, stepped on a small carpet located "just inside the door . . . took one step off the carpet and fell." *Wexler,* 321 N.E.2d at 687. "What has been variously described as a 'puddle or pool of dirty water' and an area of 'wetness' which was 'between three and four feet in length and width' covered the marble floor at the spot where she fell." *Id.*  There was evidence that visitors who entered the building before Plaintiff were responsible for the wet floor. *Id.* The Appeals Court stated, "In our view this is a case in which 'the transitory conditions of (the) premises, due to normal use in wet weather, according to ordinary experience could not in reason have been prevented.'" *Id.* (alteration in original) (quoting *Lanagan v. Jordan Marsh Co.,* 87 N.E.2d 215, 216 (Mass. 1949)).  The court further found that "[t]here was no evidence to indicate that the water on the floor was more than 'inevitably results from the tramping of many feet in such a place . . . under the conditions of weather then existing' or that it was of unusual depth or extent." *Id.* (alteration in original) (citations omitted).  "Also there was no evidence that the floor, for any reason, became particularly slippery when wet and [the court] cannot take judicial notice that a marble floor . . . becomes dangerously slippery when wet." *Id.* (citations omitted).  The court concluded that under the circumstances, "it would have been impractical to keep the lobby floor dry" and entered judgment for the defendant. *Id.* at 687-88.

Since the Appeals Court issued the *Wexler* decision in 1975, there have been developments in the premises liability law in Massachusetts that call its continuing validity into question.  As previously discussed, the SJC adopted the mode of operation approach in 2007. *See Sheehan,* 863 N.E.2d at 1284.  Three years later, in *Papadopoulos,* 930 N.E.2d at 142, the SJC abolished the distinction between natural and unnatural accumulations of snow and ice, "which had constituted an exception to the general rule of premises liability that a property

16

owner owes a duty to all lawful visitors to use reasonable care to maintain its property in a reasonably safe condition in view of the all the circumstances." *Id.* at 150. The SJC stated that a property owner owes lawful visitors the same duty of care irrespective of the hazard that is posed:

> If a property owner knows or reasonably should know of a dangerous condition on its property, whether arising from an accumulation of snow or ice, or rust on a railing, or a discarded banana peel, the property owner owes a duty to lawful visitors to make reasonable efforts to protect lawful visitors against the danger.

*Id. at* 154 (citing *Sheehan,* 863 N.E.2d at 1280-81; RESTATEMENT (SECOND) OF TORTS § 343 (AM. LAW INST. 1965)).

The SJC has not specifically addressed the impact of *Papadopoulos* on *Wexler* and there is disagreement among courts concerning the continued viability of the transitory water rule. Two sessions of this court have relied on *Papadopoulos* as a reason in rejecting arguments that *Wexler* barred liability for injuries sustained by customers who slipped and fell on so-called transitory water. *See Robbins v. Plymouth Persy's Place, LLC*, Civil Action No. 12-10261-JLT, 2013 WL 4094431, at *3 (D. Mass. Aug. 12, 2013); *Stapleton,* 2011 WL 8198179, at *2 n.2. In *Stapleton,* Judge Stearns distinguished *Wexler* on the facts and law. *See Stapleton*, 2011 WL 8198179, at *2 n.2. As to the facts, the court noted that *Wexler* addressed the impracticality of keeping the entryway free of the "accumulated melted snow" from the "persistent snowfall that had preceded the accident." *Id.* Relying on the principle announced in *Papadopoulos* that a property owner's duty of care does not vary based on the weather, the *Stapleton* court observed that the SJC "abandoned the 'natural accumulation of snow and ice' exception on which *Wexler* appears to have been based." *Id.* at *2 n.2 (quoting *Wexler*, 321 N.E.2d at 687) (citing *Papadopoulos*, 930 N.E.2d at 154). In *Robbins*, which addressed liability for the plaintiff's slip and fall on wet stairs inside a restaurant on a rainy day, the district court found Judge Stearns'

17

view of Massachusetts law persuasive and agreed with his basis for rejecting *Wexler*. *See Robbins,* 2013 WL 4094431, at *3 & n.6. *See also Holden v. Wal-Mart Stores E., LP,* No. 1783CV221, 2018 WL 7048233, at *1-2 (Mass. Super. Ct. Dec. 10, 2018) (in a case factually similar to *Wexler,* the court relied on *Papadopoulos* to reject *Wexler* and deny summary judgment for the defendant).

In support of its argument that *Wexler* bars Plaintiff's negligence claim, the government relies on cases from other sessions of this court that granted summary judgment for defendants, *see Lawrence v. Wal-Mart Stores E., L.P.,* CIVIL ACTION NO. 14-14360-RWZ, 2015 WL 12766152 (D. Mass. Nov. 2, 2015), and *Samson v. Target Corp.,* 750 F. Supp. 2d 354 (D. Mass. 2010), as well as unpublished Massachusetts Appeals Court opinions that affirmed grants of summary judgment. *See Rando v. Cumberland Farms, Inc.,* No. 14-P-1015, 2015 WL 2260133 (Mass. App. Ct. May 15, 2015), *rev. denied,* 472 Mass. 1105 (2015), and *Bolafka v. SPG Arsenal LP,* No. 11-P-614, 2011 WL 6089135 (Mass. App. Ct. Dec. 8, 2011).[3] Although the plaintiffs in *Lawrence* and *Samson* slipped and fell on wet floors in stores, neither *Samson* nor *Lawrence* addressed the significance of *Papadopoulos*. *See Lawrence,* 2015 WL 12766152, at *1; *Samson,* 750 F. Supp. 2d at 355-58. Indeed, *Lawrence* did not cite to *Wexler*, but noted that there was a "wet floor warning sign within spitting distance of where [plaintiff] fell." *Lawrence,* 2015 WL 12766152, at *1.

---

[3] The government also cites state court decisions that preceded the 2010 *Papadopoulos* decision (Dkt. No. 37 at 10-11; Dkt. No. 43 at 5-8 & n.4). A state trial court case that post-dated *Papadopoulos, Yeshulas v. Macy's Retail Holdings, Inc.,* No. SUCV200903509G, 2012 WL 3193528 (Mass. Super. Ct. June 13, 2012), did not address the SJC's decision in *Papadopoulos. See id.* at *1-3.

In *Rando* and *Bolafka*, the Appeals Court held that "*Papadopoulos* is not so expansive that it eliminated the transitory conditions analysis set forth in *Wexler*." *Rando,* 2015 WL 2260133, at *2; *Bolafka,* 2011 WL 6089135, at *1 (same). *See also Donovan v. Mass. Bay Transp. Auth.,* No. SUCV201102695, 2013 WL 10178626, at *3 (Mass. Super. Ct. Oct. 15, 2013) (relying on *Bolafka* and granting summary judgment to a defendant in a case in which the plaintiff slipped and fell in an elevator on a rainy day and failed to raise a genuine issue of material fact concerning whether defendants acted unreasonably). Although the Appeals Court's unpublished summary decisions issued pursuant to its rule 1:28 have persuasive value, they are not binding precedent. *See Chace v. Curran,* 881 N.E.2d 792, 794 n.4 (Mass. App. Ct. 2008). *Rando* and *Bolafka* suggest that had there been "evidence . . . that the floor material was more prone to become more slippery when wet," the courts might not have been followed *Wexler. Rando,* 2015 WL 2260133, at *2 (citing *Wexler,* 321 N.E.2d at 687); *Bolafka,* 2011 WL 6089135, at *1. Here, in contrast, the post office's rainy-day protocols and practices raised the reasonable inference that the lobby floor was known to become slippery when it was wet. *See Robbins,* 2013 WL 4094431, at *3 n.6 (*Bolafka* is factually distinguishable, as there was no evidence the slippery condition in that case was caused by a defect in the floor or that the floor was prone to become slippery when wet. There is such evidence here."). Based upon the SJC's language in *Papadopoulos* concerning the broad scope of premises liability, this court agrees with the reasoning of the sessions of this court that have rejected *Wexler's* application to slip and fall cases in commercial establishments. *See Robbins,* 2013 WL 4094431, at *3 & n.6; *Stapleton,* 2011 WL 8198179, at *2 n.1. Accordingly, *Wexler* does not bar Plaintiff's negligence claim.

  V.  CONCLUSION

For the reasons set forth above, the government's motion for summary judgment (Dkt. No. 36) is DENIED.  The parties will appear for a remote status conference on January 26, 2021 at 2:30 p.m.  If this date is inconvenient for either or both parties, they are to confer with the Clerk's Office and each other and propose an alternative, mutually convenient date.

It is so ordered.

Dated:  January 5, 2021                                                    /s/ Katherine A. Robertson
                                                                                            KATHERINE A. ROBERTSON
                                                                                            U.S. MAGISTRATE JUDGE